We'll proceed to hear argument in the next case on the calendar, Bekpo v. Barr for 19-1074. Good morning, Your Honors. This is Craig Rellis on behalf of Mr. Bekpo. The issues in this case, Your Honors, are three. First, Mr. Bekpo was convicted, or he was ordered removed on the basis of the commission of a crime involving moral turpitude. We don't contest that. What we do contest is that he was convicted of an aggregated felony under Section 101-A43-M of the Immigration… Mr. Rellis, I have to stop you right here because I'm concerned about the scope of our jurisdiction here. We do not have jurisdiction, as you know, to review purely discretionary decisions of the agency. We can look at legal questions and constitutional questions, but the cancellation of removal and the 212-H waiver were both denied as a matter of discretion. And, you know, your due process argument has some constitutional flavor to it, obviously. So I think that we could consider if it's tolerable. But basically, we have two discretionary decisions that we don't have jurisdiction to review, so I'm not sure why we should talk about whether you have an aggravated felony conviction or not. Could you help me with that? Absolutely, Your Honor. So respectfully, the immigration judge didn't reach the issue of eligibility for cancellation of removal because he determined that the crime of conviction was an aggravated felony. So in the transcript, during the last hearing on August 30, 2018, the immigration judge put that case… started the case and pre-terminated the cancellation of removal application because he determined that my client had been convicted of an aggravated felony. So he… although the decision states that he would have described that he would have denied the application as a matter of discretion, he doesn't get to that. He doesn't… So the cancellation application is separate. It has different factors from the 212-H waiver application. The standards are different. And the immigration court never got to the issue of weighing those equities because in the first instance, he determined prior to taking any testimony that it was an aggravated felony. So you read the BIA also as not just separately affirming the separate discretionary denial of cancellation and denial of waiver. Do you think that initial decision is premised on the eligibility finding? Is that right?  Yes, Your Honor, I do. So when the IJ says even if he hadn't committed an aggravated felony, so even if he were eligible for cancellation of removal, his criminal conduct makes it unwarranted as a matter of discretion. You think we should regard that as dicta or something? Like what… We disregard that because it's… But what's… I'm sorry. What do you think the IJ was doing when he said that? Well, I would submit that it's a backstop, Your Honor. The fact is that my client was never able to present the evidence that would establish his eligibility for cancellation because the judge determined in the first instance prior to the beginning of the hearing, prior to the start of the hearing, that he had been convicted of an aggravated felony. So it doesn't even get beyond… It doesn't get into presentation of evidence because at the start, the judge determined that it was an aggravated felony. And the separate factors that go into a cancellation of removal application… Okay, so you think that the IJ wasn't fair and maybe should have considered more evidence when determining that cancellation of removal wasn't warranted as a matter of discretion. But he did say, he did conclude that it's not warranted as a matter of discretion, right? He says that in the application, yes, Your Honor. Or in the decision, yes, Your Honor. Okay, but I, to that point, I don't think, you know, it's our position that he doesn't even, he doesn't even move further or properly analyze… No, I understand. So what you're saying is that he should have conducted a different analysis to reach that conclusion, but don't, but we don't have jurisdiction to review a discretionary decision to deny cancellation of removal, right? So even if there was a defect with respect to the decision, as long as it is a decision, it's not appealable. Well, Your Honor, but our position is that the aggravated, because it was cut off at the inception of the hearing, that he wasn't able to present the evidence anyway. So, you know, the judge's premise or the judge's decision that he wasn't eligible for cancellation is limited and based only on the fact that he determined that it was an aggravated felony, which we submit was an error. Okay, so let's talk about that. Go ahead. I'm sorry, Your Honor. I was going to say, so the aggravated felony question, so an aggravated felony is one that was convicted under the statute that talks about transferring or producing or creating a false writing, a writing that purports to be the writing of somebody else who hasn't, in fact, authorized it. So how is it possible to violate that statute without engaging in fraud or deceit? Well, Your Honor, we would say, so our position is that the conviction for the New Jersey conviction doesn't necessarily or doesn't categorically involve fraud or deceit. So the statute says that a person can, with purpose, defraud or injure. It's our position that because of the or injure part, the offense can be committed in a way that doesn't necessarily lead to fraud. But if I want to injure somebody, but still to violate the statutes, the way I'm injuring the person is I'm creating a writing that purports to be the writing of somebody else who hasn't authorized it, even though my purpose is one to injure, I'm still committing a fraud, right? Well, it's like I've created a false writing. I've done a forgery. Is your position that creating a forgery might not involve fraud or deceit? Well, it's yes, Your Honor. How can I commit a forgery without being deceptive or fraudulent? Well, you can commit a fraudulent writing with the intent to injure. So for instance, if you were to replicate somebody's law school diploma and hold it out to be something other than it was. So for instance, if you so that could that could potentially damage somebody's reputation or if they have gone to one law school and it's held out to be a different law school, for instance. But we don't even but Judge Mulligan doesn't even get to that particular instance because there was no fact finding in the immigration court with regard to those issues. Additionally, it's our position that the actual law, even assuming arguendo that the first prong of the aggravated felony statute was met, the second prong with regard to the loss of ten thousand dollars, I submit that there's no evidence in the record under under precedent to establish that the amount of loss was ten thousand dollars to this to the particular victim. So the statute allows the restitution was for worse or twenty five thousand dollars. And the law is that the amount of restitution can't exceed the loss. Well, it's perfect. It's I think I think the the statute with regard to restitution is a little different than that, in my estimation. So the the law allows for permits the court to impose a higher amount equal to double the pecuniary gain to the offender caused caused by the conduct. And it also can include taxes, fees, penalties, interest, et cetera. So although well, we have we have the judgment in the record, which actually the judgment conviction actually specifies the fees and penalties right on page 206 of the record. But then I guess I have the following question, which is I take your point like you did. Please. He was charged with all these offenses and he pled guilty to one and pursuant to the to the plea agreement. Maybe there's restitution for offenses of which he wasn't convicted. I don't know. I guess it's conceivable. But since it's Beck pose burden to show that he's eligible for cancellation of removal. There's something you could point us to in the record that indicates that the restitution amount did not reflect the loss of the victim. Well, but usually when it's when it's an order when it's a proceedings to to deport somebody and the burden is on the government, we might ask the government to point to evidence. Establishing that. But since we're talking about an application for cancellation and removal. It's your client's burden. So what what can you point me to in the record that shows that the restitution amount did not reflect the loss of the victim. Well, there is there is the testimony of Mr. Backhoe during his his removal proceedings during the August 30 30th removal proceeding. But your honor, we don't. Again, we it's our position that we don't even get to the fact of whether what the loss is or how it was calculated because the application was pretermitted. And therefore, there was no there is no opportunity for Mr. Backhoe to continue to provide evidence. And that brings me to. But it was pretty good on this ground right on the ground that he committed an aggravated felony. So this is what this is what the IJ considered. So and also you can tell me if you think that the IJ made an error. What is the evidence you would have admitted that you didn't get to admit that would have shown that the restitution amounts did not did not reflect the personal loss of the victim. Well, your honor, the the the attorney below didn't present any evidence. But again, because the because Judge Mulligan pretermitted the application before the presentation of evidence, there wasn't the record. The record is is is silent. There is there is a mention of exhibits N through Q during the last hearing. But those those exhibits are not in the in the certified record on appeal. I don't know what they contain. But the fact is, again, is that he wasn't able to present the evidence because the application was pretermitted prior to the beginning of the hearing, which means me, Mr. Ellis, where we've kept you past your time. You want to make just a closing remark and you have two minutes rebuttal. Now, your honor, just briefly with regard to the due process arguments, my my my my client wasn't on notice that he was going to have an individual hearing. The immigration judge at the end says at the July 25th hearing says that line at page 89, line 16 says that the next hearing will be for bond and for a decision on the motion to preterm it. It says it doesn't have any notice with regard to the fact that it's going to be an immigration individual hearing. Let me ask you two questions about that. My understanding was that Mr. Beckett didn't raise the argument that he hadn't been aware about what the hearing was going to be when I.J. asked why his wife wasn't present. And then given that his wife was able to submit an affidavit, how is there prejudice here in any event? Could you take a minute to respond? Sure. Well, your honor, there's there's so I think it's analogous to having a having a being aware and appearing without character witnesses to testify to his is the need for a lower sentence, for instance. So Mr. Beckett didn't. He didn't know, and I think the evidence, even though there was an affidavit, there's no there's there's no substitution for live testimony and all. And additionally, your honor, even though the affidavit was submitted, the record says, well, we couldn't get something to the effect that we couldn't get her here today. And that is my estimation indicates that there wasn't any knowledge that the individual hearing was was going to take place. And I think that, you know, obviously, we'd submit that that is a violation of the INA INA section 240. OK. So again, in this case, the IJ did the same thing he did in the context of cancellation of removal. And he said, I don't think that there's the requisite extreme hardship to his family in this case. But even if there were, I would still deny the waiver of admissibility as a matter of discretion because of the seriousness of his crime. So the the IJ is saying that even if the wife was there and I had all the testimony of extreme hardship, I still would not grant the waiver. So why doesn't that resolve this issue, too? Well, why doesn't that mean that there isn't prejudice? Because no matter what the wife would have testified, the IJ would have found that the his conduct awaited. Well, your honor, I think I think, first of all, he didn't have the opportunity to present the evidence. And that's what the that's what the INA INA 240b talks about is the opportunity to present evidence on his behalf. He didn't have the opportunity to do that. And what's more is that because he wasn't aware of the fact that that his individual hearing, his trial was going to take place on that day, his wife didn't appear. And the immigration judge drew and drew a negative inference from the fact that his wife, in fact, did not appear, notwithstanding the fact that she had an affidavit in the record. So I think it's it's troubling that he got to that conclusion without having an opportunity to present his evidence. And the judge didn't have the opportunity to hear all the evidence. And I guess the last thing I'd say to that is that the fact that he said that he would deny as a matter of discretion, notwithstanding all of the evidence is dicta. And it's not he he's Mr. Bechtel is precluded and not able to present the evidence on his behalf. Let me let me just ask you, Judge Parker, did you have a question for Mr. Ellis? I thought I heard a voice. Oh, OK. Then we'll hear from the government. Hello? Yes. Hello. Can you hear me? Yes. Yeah. OK. Hi, Elizabeth Chapman, and I represent the attorney general. As Kishner just stated, District Counsel just stated, he does not dispute that he's inadmissible to the United States because his forgery conviction is crime involving moral turpitude. The issue here is whether he demonstrated eligibility for release. He applied for two forms of release, and the agency determined he was not eligible for cancellation for removal as a matter of discretion and that discretionary determination is unreviewable by this court. The agency also determined that he did not demonstrate eligibility for a 212H waiver since he failed to demonstrate extreme hardship to his wife and daughter and out of an exercise of discretion. Agencies did not violate Mr. Bechtol's due process rights in coming to this determination. But why isn't there a colorable due process concern in the fact that the IJ ended up conducting a merits hearing when something else was scheduled and his wife wasn't actually able to testify? It seems to me that could have affected how the IJ weighed its pros and cons in deciding whether to exercise discretion, and that is a significant impediment that an affidavit can't necessarily make up for. Is that a concern that we can address even given the discretionary rubric on the two denials? So the issue here is that the record doesn't support that. The record simply doesn't support that. The Petitioner's Council, and Petitioner was represented by Council, Petitioner's Council had at least three opportunities at the beginning of the hearing to indicate if that was the case, that they were not anticipating the hearing and to object to the commencement of the merits hearing or to ask for a continuance. The first opportunity is right out the gate, the judge denied the application for cancellation, asked Petitioner's Council what other release they had applied for. She indicated a 212H waiver, and the judge says, all right, let's start the hearing  And Petitioner's Council doesn't object, doesn't indicate, oh, we didn't know we were doing a hearing right now, couldn't we not do the hearing right now? Second, the judge went through all of the exhibits, asked Petitioner's Council if anything's missing, and she responds, no, everything's fine, that he has all the exhibits. Again, she doesn't object. She doesn't say, we weren't aware that you're going to have this merits hearing right now, we are not prepared to present a merits hearing. And then third is when the judge asks the first witness, and Petitioner's attorney says the wife's not coming, when asked why, they don't say, because we weren't aware that there's a merits hearing today, we thought we were only discussing the pre-commission of the application. They said we tried to get her here, she works a very demanding job, and wasn't able to come today. So they didn't ask for a continuum, they didn't ask for testimony by phone, they didn't ask for her testimony at a later hearing. The record just simply doesn't support the after-the-fact claim that they were caught off guard and weren't ready to testify and present a merits hearing. So you would say it's just factually an unsupported claim? Correct. Okay. Could you address the $10,000 in loss and the $25,000 restitution order? Even if we end up deciding that there's a jurisdictional problem here, I'm curious about the aggravated felony determination and how the $25,000 could pile up when the record just seems unclear about how the restitution order was calculated. Sure. And before I'd like to reiterate in agreement with what you were saying earlier that there really is no need to delve into this because the agency's discretionary denial here is dispositive over the issue of his eligibility for cancellation. But if the court decides to look at it, right, under the statute, because he is applying for the release, he bears the burden of demonstrating that he's that an applicant is eligible for cancellation removal if they've proved the five years, here's a permanent residence, seven years in any status, and third, that he has not been convicted of an aggravated felony. So it would be the petitioner's burden to demonstrate that he was not convicted of an aggravated felony, which in this case, it would be his burden to demonstrate  And the only evidence that he set forth is his testimony that he only stole $5,000 and didn't steal $25,000. And when you compare that to the evidence that DHS brought forth, it's both the restitution order that says the loss of the victim was $25,000. And also the New Jersey statute stating restitution shall not exceed the victim's loss. So the burden would have been on him. Well, we have here a plea agreement, right? He pleads guilty to the first count, and then all the other counts are dropped. And if you look at the indictment, a lot of the counts have dollar figures attached to them, but not the first count, which is the one to which he pleaded guilty. But so why, wouldn't it be possible that as part of the plea agreement, he's pleading guilty to one count, but he's agreeing to pay restitution for more than the counts on which he was convicted? Right. So the question is whether it was tied to the count of conviction. Right. So how do we know that that didn't happen? And I guess, first of all, I guess my question is, does it matter? Does it matter if he's paying restitution for something that's not tied to the count of conviction? And second of all, if it does matter, how do we know that that's what happened here? Because I'm looking at the judgment of convictions, and it doesn't tell me how the order of these different counts with the other dollar figures were dismissed. Well, I do think we know that the New Jersey statute governs that says the restitution shall not exceed the victim's loss. So we know that the victim's loss is $25,000. So I think that that is important. And also— But so are you telling me that under New Jersey law, it wouldn't be possible to agree to an order of restitution that is tied to the victim's loss on all the charged counts? Even if he only agrees to plead guilty to one? You're saying that under that statute, the loss would have to be attached to the count of conviction? No, I'm saying under New Jersey law, that from my understanding, it has to be any guilty plea still cannot exceed what the actual loss to the victim was, unless it otherwise states. So for example, the case that Petitioner refers to, which was the same case, in that case, the restitution was made not pursuant to their restitution law. It was made outside of that statute. So I don't know all of the ins and outs of New Jersey law. There may be a way that you can make a restitution agreement that doesn't stick to the statute saying that the restitution needs to meet the actual loss or should not exceed it. But we don't have that evidence in this case. What we know is that it was made pursuant to the New Jersey statute. And going back to your initial question, all of these questions that you're asking would have been questions that the Petitioner would have presented to the judge to make his argument that the loss did not exceed $10,000, and the Petitioner did not make those arguments, and he has the burden of proof. But even if it's possible that the restitution order did not reflect the actual loss, it was the Petitioner's burden to show that the actual loss did not exceed $10,000. And here he simply didn't show that. He claims that he was precluded to because he wasn't allowed the opportunity to submit evidence. But DHS set forth in their motion to pre-termit all of their arguments, and they did not respond to the motion to pre-termit. So they had the opportunity to. There just is not a motion there. Thank you very much. Does that conclude your argument? Yes. I think you're about there. All right. Mr. Ellis, you have two minutes of rebuttal. Thank you, Your Honor. Your Honors, you've asked the types of questions of both me and my friend that the immigration judge should have asked and didn't ask. Mr. Bechtold was, again, precluded from presenting evidence. Essentially, the judge, well, on page 88 and 89 of the record, and specifically, the immigration judge speaks with counsels about the scheduling of the next hearing. The immigration judge on page 89 at page 16 specifically says to Mr. Bechtold's counsel that we'll be hearing—we'll be on for bond in the motion to pre-termit. There's no indication that it is on for—there's no indication that it was on for a trial. Generally, in the immigration court, people— Yeah, but then when he comes to the next hearing and the judge asks, what other kinds of relief are you seeking? And he says, I'm also seeking a waiver of admissibility. And the judge says, okay, well, let's proceed to that hearing. Why doesn't Bechtold or his counsel say, well, the wife's testimony is very relevant to that, and we couldn't get you here today because we didn't expect it to be discussed today, and so we'd like a continuance? Well, I think— Or we'd like an opportunity for her to testify in some other way. I mean, I guess you could have a hearing and then also take testimony the second time. Sure, Your Honor. So I think that the inference from the fact that counsel said, we weren't able to get her here, she works a demanding job, goes right along with the hardship component that the family was undergoing, financial hardship, which Mr. Bechtold tried to bear out in his relief, in his 2-12 age relief. And because they simply didn't know that it was going to be on for a trial, she didn't come to court because she needed to work and she needed to be the sole support for the family in his absence. But they didn't expect and ask for a continuance or say that we didn't know that this is what was going to happen today. Well, if we had, we would have made sure she was here. Again, Your Honor, right, they did not do that. But there are other indications that there— I mean, it's clear from what Judge Mulligan said that it wasn't on for an individual hearing, that he scheduled that. In the immigration court, sometimes things are scheduled for individual hearings so the judge can reserve a slot to give a decision. But there's nothing here to indicate that. And again, and also with regard to the due process issue, at the beginning of the hearing, Judge Mulligan deprives Mr. Bechtold of his ability to present evidence on his due process right because he had pretermitted prior to any presentation of evidence. He wasn't given the opportunity. So to now, not only to—he wasn't on notice that his wife needed to be there, which a negative inference was drawn. And also, there was negative inference with regard to the monetary amount. He wasn't able to present any evidence. I'd submit to the court that, again, that this case warrants a remand so that there can be factual findings. Wait a second, wait a second. You're saying he didn't have notice about the waiver of disability. But there's no dispute that he has noticed about the motion to pretermit. So if he knows that they're definitely going to be talking about whether he committed an aggravated felony, why doesn't he come with the evidence that he wants to admit as to the restitution amount? Well, Your Honor, he was able to testify about that. But I think that he simply didn't know. And again, there may have been—I think one other thing that I pointed out previously that I should point out again is that Judge Mulligan references exhibits N through Q, but those are not in the certified record on appeal. There's no mention of them aside from the introduction of the evidence at the beginning of the hearing. So what would it have been? Could you just tell us what evidence does Mr. Bechtel have that he was deprived from presenting to the immigration judge that would have shown that the restitution amount doesn't reflect the personal loss of the victim? Well, Your Honor, I wasn't counseled below. I simply don't know. I don't have those exhibits. They're not in the certified record. But for instance, he could have presented the plea colloquy. He could have presented his plea agreement, if there was a written plea agreement. There's a whole host of—those are two specific things that he could have presented to illustrate that the restitution amount didn't match with the actual loss or how it was itemized, but he was precluded from doing so. Or perhaps— As I read the record, he didn't give Mulligan the indication that there was any other pertinent evidence that he had available or could get and wanted to present. Well, again, Your Honor, we don't—exhibits N through Q, or tabs N through Q of Exhibit 6 aren't before this court. They're not in the record. I don't know what was in there. Well, that suggests that some evidence, presumably offered on behalf of your client, was relevant and was admitted. So that, it seems to me, calls the question about the wife's testimony. I mean, he didn't make any sort of proffer as to what she would say during the process in which evidence was being presented. And at the end of the hearing, I mean, when it got around to her, he simply told the hearing officer that she had other commitments and wasn't available. Well, we don't know, but he should have been able to present the evidence. The fact is, is that the immigration judge— He didn't ask to present it. Well, he didn't ask to present it because the application was pre-terminated at the inset. So the hearing started— He just said that he introduced exhibits that go all the way to Q, right? So he did have the option to present evidence. So I understand. Are you saying he didn't get to introduce evidence or he introduced evidence and the judge didn't pay attention? Or there's some more evidence that he would have wanted to present that he just didn't present for whatever reason on that day, and you'd like to go back and introduce more evidence? I don't know what the argument is. So were there exhibits that he introduced or were there not? And if there were, does that mean he introduced evidence and had the opportunity to introduce evidence? Well, we don't know what the— We don't know what those— The record, again, is silent. I don't know what those exhibits— Well, he introduced the evidence. So it's a very reasonable assumption that he was introducing evidence favorable to his client. Well, I guess we don't know what's in those unexamined exhibits. And we have your papers, Mr. Ellis, and I think we will close our argument here and take the matter under advisement. Thank you very much.  Thank you, Your Honor.